Good morning, this is Sherry Rusk for Appellant Lamance Cookie Bert, and I'd like to reserve two minutes for rebuttal. Your Honors, the issue here is whether or not under the Strickland standard, trial counsel was ineffective in failing to ask for a mistrial twice during the trial. In the first instance, trial counsel was overheard by the jury to make comments about race. After it was clear on the record that the jury had inadvertently heard these comments, the district judge invited trial counsel to ask for a mistrial, and trial counsel declined to do so. Trial counsel provided a declaration to this Court saying that his performance was so deficient. Could you have raised this on direct appeal? Why couldn't you have argued that this was plain error? Since counsel didn't object, was given an opportunity to object, Judge Carlson was there, saw the whole thing, discussed it with him. Why couldn't you just argue that it was plain error on direct appeal? Well, counsel failed to object, obviously, at the time. Right. That would give you direct – that's why it would be plain error review on direct appeal. But why didn't you raise this on direct appeal? If it's so obvious – Right. If it's so obvious we've had a deprivation of the Sixth Amendment here, why didn't we have a violation of the Fifth Amendment that should have been raised on direct appeal? It probably should have been raised on direct appeal. But, you know, in this instance, here on habeas – Is it the same lawyer? The obvious – Who handled the appeal? Yes. It was the same lawyer that handled the appeal. Handled the appeal that did the trial. Correct. So once – and probably should have raised it on appeal. Once counsel was in – Well, then he would have been calling his own performance deficient in the appeal, and he can't do that. True. So this would be, under our law, I would assume more appropriate for development. In a 2255 context. Okay. Once the district court invited counsel to ask for a mistrial, counsel declined to do so instantaneously. And counsel has provided no strategic reason for doing so, nor does there seem that there could be a strategic reason for doing so. In some instances, had evidence developed at the trial level, counsel might make a decision about the way the evidence came in in declining to ask for a mistrial. But in this case, it was at the beginning, right after the jury was impaneled. But two things had happened. At this point, they'd spent the better part of the day before selecting this jury. And second, it shows that the attorney requested time to speak with his client. Permission was granted, and then the attorney announced his decision that they would not seek a mistrial and hoped that was the right decision. I'm wondering what was supposed to happen necessarily if such a motion had been made. They would have started jury selection presumably over again, and there was absolutely nothing to lose by doing that. No evidence had been made. But you're assuming that the motion would have been granted. Absolutely. The district court judge made comments on the record, which this Court has seen, that the jury inadvertently heard comments about race. It was a black defendant, an all-white jury, but for the one black juror that was late. That was broadcast into the jury room, and the district court judge then said, you might be perceived as playing the race card. Do you want to make the motion? But the judge didn't say, and if you make the motion, I'm necessarily going to be granting it. There are other steps that the district judge could have taken before that happened, don't you think? That's absolutely true. But there's no reason to believe the district court judge wouldn't have granted it. I mean, there was really little to be lost here. It wasn't a case where days of evidence had been presented. But it shows that the judge is a little anxious, shall we say, to get these proceedings underway, and the parties had spent apparently the better part of the day before selecting the jury. So there is some reason even for Mr. Byrd and his counsel to conclude that we really would like to get this thing going, don't you think? There may have been, you know. It would appear to me, just from looking at what was said, that they wanted to keep that jury. It was a gamble, but they didn't want to start again. I don't know. There's obviously nothing on the record below that would show that. We do know that the jury heard comments that could have biased them against the defendant, race-based comments, and they could have selected a fresh jury that had no taint. You know, there was nothing to be lost by doing that. Maybe they thought they had a good jury. Well, to the contrary, the trial counsel's comment indicated, I don't want to lose the one juror that I think might be sympathetic. Well, he might have had a marginally better jury with the one that he lost, but it doesn't mean that he was dissatisfied with the jury that he had remaining. But once the jury had heard the comments and the bell couldn't be unrung, there was the possibility of prejudice. And so there was no reason at this point to take that risk. They hadn't presented evidence yet. He could have started with a fresh jury. There's no likelihood that the same broad panel would give them a jury that wasn't equally good to the one that had been impaneled. There was really no downside to requesting. Back to the question that I started with, which I think is a follow-on to Judge Stotler's question, which is, if this was so obviously wrong, then why didn't Judge Carlton stop and say, well, I don't care whether you make the motion or not. I mean, you just told me that it should have been plain error and it should have been argued on direct appeal. Then why didn't Judge Carlton stop the trial? I don't think that's Judge Carlton's province to do that. Well, if it's an obvious error and we have an obvious violation of the Sixth Amendment, why isn't it his obligation at that point to correct it? I think the whole point of plain error is that it's so plain that it was error for the district court not to take it. Well, I think the district court properly and appropriately invited counsel to make the motion and allowed counsel to make that decision. And in this instance, counsel should have made the decision. And remember, this is not the only – there was a second instance where the lights went off at the trial and the defendant was momentarily restrained. And again, counsel had failed to ask for a mistrial. So you've got the cumulative effect of both of those things. The test in Strickland is, is there a reasonable probability of a different outcome? And it seems very likely here that the judge would have granted a mistrial and the defendant wouldn't have been convicted.  There would have been a different outcome. How does that follow? I'm just going to assume for a moment that a reasonable attorney would have made a motion for mistrial, and I'll assume that the district judge was going to grant it, and we start all over again. What's the difference in the outcome with this evidence? Well, in the first trial, the defendant was convicted. The outcome of the first trial, had a mistrial been granted, there wouldn't have been a conviction. So in that first trial, plainly, the defendant would not have been convicted because the mistrial motion would have been granted. But our test really looking back is whether or not there was really a difference in the outcome, outcome meaning the entire case. Right. And in fact, in that first trial, the defendant was acquitted of one of the counts of possession. The defendant was acquitted of the marijuana count. There were other issues that the record below demonstrated. There was a question about whether or not this was knowing possession at all. So in all likelihood, it's possible there could have been another outcome had the jury not been prejudiced by those comments. So he would have, in all likelihood, the defendant would have been granted a new trial if the mistrial motion was made, and the result might have been different at the new trial. And there's some evidence to suggest that the result would have been different in a new trial. I mean, again, you're confronted with a situation where you have a black defendant with an all-white jury. The lone black juror is replaced. Comments about race are broadcast into the jury room. A mistrial motion is not made. In the same trial, the lights go out and the defendant appears to be restrained face-down on the table. A juror makes eye contact with the defendant. Cumulatively, this jury was tainted, and there was no reason not to ask for a mistrial at either of those points, and the district judge was likely to have granted the mistrial motion, and the outcome in a new trial could have been different. And the only standard before this Court is, is there a reasonable probability that the outcome would have been different? There's no suggestion here that trial counsel made a strategic decision. Trial counsel's given a declaration saying my performance was deficient. There's no suggestion that it was made for any strategic reason. That's very noble, perhaps. But let's just talk for a moment with regard to the trial itself. This conversation was not about the evidence in any way, shape or form, and the Court gave an instruction at the conclusion that talked about what the evidence was. Was there any type of other racial component in the evidence itself of the trial, perhaps? It was white DEA agents. It was a black defendant. Again, an all-white jury. I mean, in the testimony, was it somehow relevant in the testimony? Well, it was a drug courier profile. That's what the stop was. It was a profile stop, and racial profiling was an issue, yes. The only reason that the defendant was stopped was following a profile that Amtrak had that he had purchased a one-way ticket, and one of the issues in pretrial motions was whether the stop was race-based itself, because it was a black defendant. So race clearly was an issue. But that wasn't part of the evidence before this jury. No, it wasn't. But it was part of the broader issue that was decided at trial. Okay. If you want to reserve a little time for a moment, we'll give you 30 seconds. Good morning. May it please the Court. I'm Samantha Spangler, Assistant United States Attorney. And I'm here to represent the government. I'd like to start with a point that Ms. Rusk started with, which was that the issue is under Strickland. However, the problem that I'm presented with is the district court and the magistrate judge who issued the findings and recommendations imposed this Lockhart v. Fretwell standard, which is whether the trial was unfair or unreliable. And that puts me in a box. I'm standing here before you trying to argue that the Fretwell standard, which I acknowledge now is actually a higher standard, even though I said in my brief that it was a lower standard. It is, in fact, a higher standard. I've studied the Williams v. Taylor case, and I've studied Fretwell. And I've concluded that it is, in fact, a higher standard. And so I'm put in a box of trying to argue that despite all that, despite the glaze that the magistrate judge and the district judge put on this case, despite being cited to the Williams v. Taylor case repeatedly by me, they simply ignored Williams v. Taylor, the Supreme Court case that says the Fretwell analysis does not apply in the run-of-the-mill ineffective assistance case like this one. And I'm forced to argue that despite all that, there still is no showing of prejudice under Strickland. But what do you think is the appropriate standard? Strickland. Okay. And under Strickland, what does the petitioner have to show? In this case, the magistrate judge's findings and recommendations skipped over the performance prong and went straight to the prejudice prong. So we don't even know what the magistrate judge's thinking was relating to the prejudice prong. On the second issue, for example, she presumed, for the sake of argument, that the facts were as presented by the movement, that he was in fact restrained with his face down on the table. When the government presented evidence in the form of a declaration by a court security officer who was in the courtroom at the time, that he did not put his face down on the table. Instead, he put his hands on the man's shoulders and said softly to him, don't you move. There's nothing in the record that shows either way. And the magistrate judge would have had to conduct an evidentiary hearing to resolve that issue on the performance prong. As to the ---- So do you want us to send this back? I don't understand. Are you conceding error or what? I'm not authorized to confess error. And, Your Honor, quite frankly, I had my mood argument with my appellate chief two days ago. And it was actually last night that I thoroughly studied the Fretwell and the Williams case and came to the conclusion that it is, in fact, a higher standard. And that I was in this box. And so I studied the FNR last night trying to find whether I could legitimately argue that under Strickland the magistrate judge, in fact, applied Strickland in analyzing the prejudice prong. But I find, unfortunately, that the magistrate judge really analyzed the case under Fretwell. And I'm almost to the point ---- Well, now, what's the difference? As you see it, what's the difference between the Strickland and the Fretwell standard? In the Fretwell standard, the Court is not supposed to look strictly at Strickland, but also the additional analysis of whether the trial was fundamentally unfair or unreliable. And that's the standard that it appears that the magistrate judge and the district judge held the defendant to. And even though there is a ---- Well, it's okay. It's just a legal ---- we look at this record. Yes, you can look at the record. So why don't we just apply the Strickland standard? Let's just do that, then. What is there that shows that the performance of counsel was deficient? Okay. In that regard, there ---- Other than his statement that, oh, yes, I think I was deficient, which is ---- There's nothing. ----plaudible. There's nothing other than that. And Mr. Ballas, who's in the courtroom, is a master strategist. And I'm sure that this was a strategic decision that he made after consulting with the defendant. And I'm sure that at the time he considered whether making the motion would have focused more attention on the race issue. I'm sure he considered whether giving the possibility that the mistrial motion would be denied, whether raising the issue would be more likely to prejudice the jury against the defendant. And whether the delay of the trial resulting from the mistrial motion would be in the defendant's best interest. Let me ask you this. Does the record show that he consulted with his client before deciding to ---- Yes, it does. Yes, it does. It shows that at ER 36 to 37, the transcript of the proceedings below regarding this broadcast into the jury. So, I mean, in addition to that, we have the known composition of the jury at the time. And, yes, there was this black juror who was late coming to court. And that's what the whole issue was about that was broadcast to the jury. And ultimately, at 11 o'clock, that juror was dismissed because he hadn't arrived at the courthouse by then. And they seated a new juror. We don't know whether that person was ---- we don't know that person's race. That's not in the record. And then the trial proceeded. It was only a three-day trial. So the jury instruction that was given at the conclusion of the case, that you're not to consider anything that occurred outside the courtroom, and the arguments of lawyers are not evidence, those instructions we can accurately presume the jury would have followed. So I just don't see where there's any prejudice. And, in fact, as I pointed out in my brief, the defendant made only conclusory allegations attacking the findings and recommendations repeatedly until the reply brief. And then the reply brief attempts to make an argument for prejudice. If we thought there was deficient performance here, what would satisfy the Petitioner's burden to show prejudice? Do we go then to the possibility that the district court would have granted a mistrial? Yes, you do. Or do we have to show that there's something more? No. I think it is about the district court's ruling on the motion for mistrial. If one had been made ---- The fact we didn't get a mistrial would be prejudice to the Petitioner. You know what? That's really not prejudice to the Petitioner. That's why we're asking the question. That's a really good point. What would the Petitioner have to show? Assuming that we found there was deficient performance, what prejudice would they have to show here? I guess what we would have to look at is these proceedings. And under Strickland, we have to look at this proceeding that was before the Court, and that's the motion for mistrial that was allegedly not made. And so the prejudice to him would have been, if his attorney had improperly failed to make a motion for mistrial, that the Court wouldn't have had the opportunity to consider his motion for mistrial. And therefore, it would be whether the mistrial motion should have been granted had the defense attorney made the motion. And so, you know, it's really difficult to say that the defendant would have been prejudiced by getting a new trial, because that clearly would not be the case. But if Judge Carlton had heard the motion for mistrial, then the government would have had an opportunity to weigh in on the issue. And the Court would have also done independent research, regardless of what the government said. The trial judge in this case was Judge Carlton, right? Yes. So this is Judge Carlton sitting on a habeas matter over a matter for which he was the trial judge. Yes. That's standard, because the 2255 is a motion within the criminal case. And in this circumstance, he referred the matter to the magistrate judge to issue findings and recommendations, and if necessary, hold an evidentiary hearing. And in this circumstance, the magistrate judge issued findings and recommendations. That's standard. Yes. It's standard operating procedure, Your Honor. But both of them ignored the government's argument about Williams v. Taylor, and that's why I'm in this box. But nonetheless, do you have any questions or concerns about the second issue, the holding down the, allegedly holding the defendant's head down to the table during the lights going out in the courtroom? Evidently not. Unless you have any further questions, I'm prepared to submit the matter. Thank you. Thank you, Your Honor. I'm not sure there will be any further questions. We'll give you 30 seconds, but you don't have to use it. That's all I need. I just want to emphasize that both the government and the appellant here are agreeing that this was incorrectly analyzed by the district court, that they used the wrong standard, that the district court used a Fretwell standard, which was a gloss added on to Strickland, and it was too high a burden of proof for the defendant, and it was not the appropriate standard, which both parties are agreeing with, and the Court should remand for a new trial because the proper standard wasn't applied. But we understand. Okay. Thank you. The case just argued is submitted for decision.
judges: Stotler, Schroeder, Bybee